IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| DAVID A. KIRKLAND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. _____ |
| ) | **JURY DEMANDED** |
| DENSO MANUFACTURING ) | |
| TENNESSEE, INC. ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

Comes the Plaintiff, David A. Kirkland, and sues the Defendant, Denso Manufacturing Tennessee Inc., and for causes of action would show the Court as follows:

1. The Plaintiff, David A. Kirkland, is a resident of Blount County, Tennessee.

2. The Defendant, (DENSO), is a corporation registered to do business in Tennessee, with its principal place of business located at 1720 Robert C. Jackson Drive, Maryville, Tennessee, 37801-3748. Denso may be served with process through its registered agent, Corporation Service Company, 2908 Poston Ave., Nashville, TN 37203-1312.

3. DENSO's Maryville operation is an assembly line type manufacturer of items such as automobile parts. The supervisory culture of DENSO's Maryville plant as material to this case can be fairly stated to the effect that "real men do not need mental health care, and those that seek it are faking, malingering, and weak persons having no business working a manufacturing job."

4. Plaintiff asserts federal question causes of action under: 1) the Americans With Disabilities Amendment Act of 2008, 42 U.S.C. § 12101 *et seq.*; (ADA) for disability

discrimination and retaliation. Subject matter jurisdiction over such cause of action is conferred on the Court under 28 U.S.C. § 1331 and 42 U.S.C. § 12117. Plaintiff also asserts state law causes of action under the Tennessee Disability Act, T.C.A. § 8-50-103 (TDA), common law retaliatory discharge, and outrageous conduct based upon Defendant's course of dealings with Plaintiff. Subject matter jurisdiction over such state law causes of action is conferred on the Court under the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367.

5. The Defendant has a sufficient number of employees and is engaged in an industry affecting commerce so as to be subject to 42 U.S.C. §§ 12101 *et seq.*

6. Venue is proper under 28 U.S.C. § 1391 as Plaintiff is a resident of this district and the cause of action accrued within this district.

7. After his unlawful termination on or about October 6, 2011, Plaintiff timely filed on January 9, 2012 a Charge of Discrimination with the EEOC. (Exhibit 1). The EEOC issued on Thursday, May 17, 2012, a Dismissal and Notice of Right to Sue letter, mailed from Nashville, Tennessee on May 17, 2012, and which was received on Monday, May 21, 2012. (Exhibit 2).

8. Plaintiff Kirkland was employed by Denso for a period of fifteen years, most of Kirkland's adult life, until his unlawful retaliatory discharge on or about October 6, 2011.

9. Since at least as far back as 1998, Kirkland has suffered from and been treated by a psychiatrist for Generalized Anxiety Disorder. Without medication, Kirkland would be practically non-functional, and would be unable to perform work in jobs creating, what would be for mentally non-disabled individuals, ordinary job stress. The fast-paced and stressful work at Denso is greater than stress associated with typical employment. Without medication, anxiety disorder substantially impairs and/or limits several of Kirkland's major life activities, including:

sleeping, concentrating, thinking, communicating, and working. Especially if untreated, anxiety disorder in Kirkland's case, would substantially impair his neurologic functions and brain.

10. Untreated, Kirkland's medical condition results in substantial impairment of his major life activities involving neurologic and brain functions. Untreated, Kirkland's medical condition results in a substantial impairment of his major life activities, including but not limited to: sleeping, concentrating, thinking, and working. Untreated, Kirkland's medical constitutes a "disability" within the meaning of 42 U.S.C. § 12102.

11. Fortunately, medical treatment greatly improves Kirkland's mental health and ability to engage in major life activities. Kirkland has been under the care of a psychiatrist, David L. Snow M.D., since August 10, 1998, for persistent Generalized Anxiety Disorder. With psychiatric treatment and a long-term regimen of prescription medicine, Kirkland is qualified for numerous positions at Denso, including certain non-supervisory positions he held during his 15 years of employment with Denso. Until supervisors learned that Kirkland was, in their words and/or views "a mental case" and "one of Snow's, nuts," Kirkland had impeccable evaluations. After supervisors learned that Kirkland was treated by a psychiatrist, a pattern of harassment retaliation began.

12. Dr. Snow's treatment of Kirkland's disability was of such success that Kirkland intended to remain employed at DENSO at least ten more years, making Kirkland eligible for certain retirement benefits. Moreover, work at DENSO was all Kirkland is trained for. Kirkland took pride in his employment with DENSO, which became an indelible part of Kirkland's self image. A DENSO employee is widely recognized as "somebody" within the Maryville community where Kirkland resided. Obviously, pride in one's employment, in and of itself,

3

promotes mental health and feeling of well-being for one with documented anxiety disorder. Kirkland depended on his income from DENSO to meet expenses with a wife and two children, ages five and eight. Taking pride in being a family "breadwinner," in and of itself, promotes mental health and feeling of well-being for one with documented anxiety disorder.

13. However, certain of Kirkland's supervisors disagreed with the medical judgment of Dr. Snow, whom they knew to be a psychiatrist. Kirkland's supervisors made discriminatory remarks showing direct evidence of disability discrimination such as one who stated "Snow is giving (employee Doe) another associate a free vacation." The supervisory culture at Denso made fun of mental health patients. Naturally, Kirkland did his best to hide from DENSO the fact that he was under the treatment of a psychiatrist for ten years. However, around December, 2009, certain supervisors learned that Kirkland was a patient of Dr. Snow, and Kirkland was treated as a "less than."

14. For about seven years, Kirkland held the position of "Production Associate." Kirkland received favorable performance reviews and Denso considered Kirkland's work to be adequate if not superior. Indeed, in 2004, Kirkland was promoted to a supervisory position known as "Group Leader." After satisfactory performance in this supervisory position for about five years, the supervisory responsibilities eventually became too stressful for Kirkland. In December of 2009, and again in January 2010, Kirkland took unpaid FMLA leave from work at the direction of Dr. Snow. DENSO naturally required medical documentation of the need for leave, which Kirkland provided through submitting records/information from Dr. Snow to DENSO HR personnel.

15. Consistent with attitudes of supervisory personnel at DENSO regarding persons with

4

a mental health disability, word spread like mushrooms sprout in a damp forest, from DENSO HR to Kirkland's supervisors and even co-workers, that Kirkland was "a mental case," and another employee "under Snow's umbrella."

16. After word got out that Kirkland had a mental health disability, the attitudes of supervisors and conditions of Kirkland's employment changed. After the one week off in December–the first week Kirkland had an unplanned, week-long absence in nine years–supervisors would no longer talk to or just ignored Kirkland. Dr. Snow took Kirkland off work for two weeks in January, 2010. This was, again, unpaid FMLA leave.

17. On first day back at work in February, 2010, Kirkland was summoned before five supervisors, managers and presented with a "Performance Improvement Plan" containing entirely subjective "standards" for evaluation, stated in draconian fashion, regarding "evaluation" of Kirkland's performance and a wide array of "circumstances" that would result in immediate termination. Of course, Kirkland's continued employment was contingent upon his signature/agreement to the Plan's draconian provisions. (Performance Improvement Plan, Exhibit 3)

18. Recognizing the hallmarks of mental health disability discrimination, and the angle of the sword of Damocles, Kirkland retained counsel. On February 17, 2009, counsel for Kirkland delivered to DENSO HR a request for reasonable accommodation through demotion back to Kirkland's previous, non-supervisory position as Production Associate. Though a demotion, the move was recommended by Kirkland's psychiatrist, and concomitantly provided the best mechanism to separate Kirkland from those who formulated the "Performance Improvement Plan," which was obviously a plan to rid DENSO of "a mental patient."

5

19. Kirkland through letter from counsel dated February 17, 2009, requested as a reasonable accommodation a "demotion" back to his prior position as Production Associate. At that time, DENSO approved Kirkland's requested demotion back to Production Associate, since supervisors viewed that as a step backwards and "punishment" in and of itself.

20. Kirkland provided to Denso Human Resources Department information satisfactory to Denso as documenting Kirkland's mental health disability in connection with a request for FMLA leave. By February, 2010, DENSO supervisory personnel were well aware of Kirkland's mental health disability.

21. In the alternative, DENSO regarded Kirkland as a person with a disability. Indeed, DENSO required Kirkland to submit on April 8, 2010, to an "independent psychiatric examination," which directive Kirkland complied with. The psychiatrist selected by DENSO to examine Kirkland, confirmed that, from a psychiatric standpoint, Kirkland, with continued treatment, was qualified for the position he then held as a "Production Associate."

22. After the affirmation of Kirkland's qualifications to continue his employment at DENSO provided by DENSO's "IME" psychiatric examination of Kirkland, Kirkland's supervisors became all the more earnest about ridding themselves of a "mental defective" or "weakling" like Kirkland. In late July or early August, 2011, Kirkland's supervisors notified him that he was being charged with "sexual harassment" as a result of a conversation between several persons working "on the floor" at DENSO with whom Kirkland has occasional contact. DENSO has never revealed the date, time, identity of the charging party or witnesses, nor particulars of Kirkland's alleged "offense." DENSO required Kirkland to provide a "statement" regarding what he remembered about what Kirkland might have said if the incident was the incident

6

Case 3:12-cv-00431-TAV-CCS   Document 1   Filed 08/17/12   Page 6 of 10   PageID #: 6

Kirkland supposed DENSO supervisors were talking about. Kirkland provided a written statement about the believed or "hypothetical" exchange that he thought might be the subject of the charge.

23. In due course, DENSO set in force mechanisms for Kirkland's termination from 15 years employment based upon an alleged–and unrevealed–dialogue between several employees who have little contact with one another.

24. On August 23, 2011, counsel for Kirkland sent DENSO's legal counsel a second letter requesting a reasonable accommodation, which was a proposal to re-assign Kirkland to a position he previously worked at a different location in the 1/8th mile wide/long assembly plant and on a different shift than that worked by the accuser. The August 23, 2011 letter pointed out that: a) the alleged (hypothetical since not known), brief, single conversation could not reasonably be construed as sexual harassment, b) even if it could, Kirkland was being singled out from three other participants, male and female, in the discussion (if Kirkland's assumptions of what conversation was at issue are correct), c) Kirkland's transfer would constitute affirmative action by DENSO to "cease the harassment;" and d) if DENSO consummated Kirkland's termination based upon this alleged charge, all the hallmarks of pretext for retaliatory discharge would be present.

25. These cogent arguments notwithstanding, DENSO terminated Kirkland's employment through a Separation Notice dated October 6, 2011, stating: "Associate was discharged for gross dishonesty and misconduct." Kirkland's last day worked at DENSO was September 26, 2011.

26. On information and belief, Plaintiff was replaced by someone without a mental

disability.

27. Plaintiff Kirkland alleges that his treatment, and the terms and conditions of his employment between January 2011 through termination was discriminatory and hostile towards one with a known disability or who was regarded as having a disability in violation of the anti-discrimination provisions of the ADA, specifically, 42 U.S.C. § 12112, and the TDA, specifically T.C.A. § 8-50-103.

28. Plaintiff Kirkland alleges that his termination was unlawful under the ADA, 42 U.S.C. § 12112, and TDA, T.C.A. § 8-50-103, because DENSO desired to eliminate from employment persons like Kirkland with a mental health disability who were otherwise qualified for the employment position.

29. Plaintiff Kirkland alleges that DENSO's refusal to afford Kirkland the reasonable accommodation of transferring him to a different section of the plant and/or different shift in lieu of termination violated the reasonable accommodation requirement of the ADA, 42 U.S.C. § 12112, and TDA, T.C.A. § 8-50-103.

30. Plaintiff Kirkland alleges that his requests for reasonable accommodations for his disability, and complaints of discriminatory practices made discriminatory under the ADA and TDA were protected activities under the ADA, TDA. Plaintiff Kirkland alleges that his termination was unlawful under the anti-retaliation provisions of the ADA, 42 U.S.C. § 12203, and TDA, T.C.A. § 8-50-103, because DENSO terminated Kirkland because he had both requested reasonable accommodations under the ADA and protested discriminatory conduct by DENSO supervisors made unlawful under the ADA, 42 U.S.C. §§ 12112, 12203, and TDA, T.C.A. § 8-50-103.

8

Case 3:12-cv-00431-TAV-CCS Document 1 Filed 08/17/12 Page 8 of 10 PageID #: 8

31. There would have been no unreasonable hardship for DENSO to have afforded a reasonable accommodation involving re-assignment to a different position in a large assembly plant and/or shift change rather than terminating a 15-year veteran employee.

32. The ramifications of terminating the employment of a 15-year veteran employee, known to be a husband, and father of two small children, in the current recessionary economic climate are extreme and unconscionable.

33. Plaintiff Kirkland asserts that the acts and behavior of DENSO, through its officers, supervisors, employees, and/or agents towards a loyal, 15-year employee and which had such a severe impact on Kirkland as to require additional medical treatment constitutes the common law tort under Tennessee state law of outrageous conduct or intentional infliction of emotional distress under the circumstances of this particular case.

34. Plaintiff Kirkland asserts that, as a proximate cause of Defendant DENSO's actions as set forth above, he has suffered substantial loss of income and other financial loss, including back pay, front pay, health insurance and other benefits, together with pre-judgment interest, as well as great humiliation, embarrassment, and emotional distress of such severity as to require additional medical treatment not otherwise necessary.

35. Plaintiff Kirkland asserts that the actions of Defendant DENSO were wilful or in reckless disregard for his rights under both federal and state law, justifying an award of both liquidated and punitive damages.

36. Plaintiff respectfully demands a jury to try the issues joined herein.

WHEREFOR, Plaintiff prays for relief:

1. Compensatory damages, including back pay, front pay, or in the alternative

reinstatement if the Court deems it proper;

2. Punitive damages;

3. Pre-judgment and post-judgment interest;

4. Reasonable costs including an award of reasonable attorney's fees;

5. The costs of this action;

6. A jury to try the issues joined; and

7. Such further and general relief to which the Court finds Plaintiff entitled.

Respectfully submitted this 17th day of August, 2012.

**DAVID A. KIRKLAND**

BY: _____
John C. Duffy, BPR#010424
P.O. Box 11007
Knoxville, TN 37939-1007
(865) 766-0904
jduffy@johncduffy.com